VASQUEZ, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 233. Argued April 9, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 331.)

12

14

For the appellant there was a brief and oral argument by *Harvey L. McCormick* of Milwaukee.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Donald P. Johns*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondents Milwaukee Valve Company and American Mutual Insurance Company there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

WILKIE, J. The applicant alleges two prejudicial errors in the commission proceedings: (1) The commission erred when it based its decision on the hearing examiner's incomplete synopsis of the evidence; and (2) a certain medical report was improperly admitted.

*Examiner's Synopsis.*

A review by the industrial commission on the basis of an examiner's synopsis constitutes a permissible and proper review of the evidence under sec. 102.18 (3), Stats., which requires that the commission's action be based on a review of the evidence submitted.[2] This procedure is predicated partly on the proposition that the commission is an administrative fact-finding agency whose large case load makes it impossible for the individual commissioners to read the transcript of the testimony.[3] What is required is that the synopsis of the examiner be an adequate and fair summary of the material testimony so that the commissioners are able to get an accurate impression of the testimony elicited.[4]

The examiner's synopsis in this case covers 28 pages of the record. It includes a painstaking summary of all

[2] *Falke v. Industrial Comm.* (1962), 17 Wis. 2d 289, 116 N. W. 2d 125; *Wright v. Industrial Comm.* (1960), 10 Wis. 2d 653, 103 N. W. 2d 531; *Fitz v. Industrial Comm.* (1960), 10 Wis. 2d 202, 102 N. W. 2d 93; *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. 2d 42; *Berg v. Industrial Comm.* (1940), 236 Wis. 172, 294 N. W. 506.

[3] *Falke, supra,* footnote 2.

[4] *Falke, supra,* footnote 2; *Matayo v. Industrial Comm.* (1958), 5 Wis. 2d 401, 92 N. W. 2d 743; *State v. Industrial Comm.* (1956), 272 Wis. 409, 76 N. W. 2d 362. Where the commission *reverses* an

the material testimony. It also includes all the inconsistent testimony that can be gleaned from the record.

Applicant's first claim that the synopsis is inaccurate and incomplete concerns the commission's finding "that he [the applicant] mentioned no back injury to any doctor until sometime in June 1964." This finding is fully supported by the record. Dr. Saketos made it clear that the diagnosis of slipped or herniated disc was entered on the record after claimant was discharged from the hospital and not on March 27, 1964 (two days after the alleged injury) as claimed by applicant. Furthermore a notation by an intern of possible back injury indicates that Vasquez did not make such a claim until shortly before the June 5, 1964, surgery.

We are satisfied that the synopsis is both fair and accurate.

### Medical Report.

Under the provisions of sec. 102.17 (1) (as), Stats., the contents of a physician's verified medical report, when presented by a claimant for compensation, constitutes, subject to the rules of the commission, prima facie evidence of the matter contained therein.

Appellant claims that a medical report executed by Dr. Spankus was improperly admitted into evidence. The questioned report is embodied in a short letter written by Dr. Spankus. The letter does not comply with industrial commission rule 80.22 (4), (5).[5] The letter is not verified, it is not on the form prescribed by the commission and it was not filed with the commission

examiner on the basis of credibility, additionally the commission must have the benefit of that examiner's personal impressions of the witnesses. *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 153 N. W. 2d 81.

[5] 4 Wis. Adm. Code, sec. Ind 80.22 (4), (5), October, 1965, Register No. 118.

fifteen days prior to the hearing. However, Dr. Spankus testified at the hearing and was available for cross-examination. His testimony included the brief description of his appraisal of Vasquez's condition that is found in the letter. Consequently, under the circumstances, any error that the commission might have committed in receiving the letter into evidence could only be harmless, not prejudicial.

### Credible Evidence.

This brings us to the main issue on this appeal: Whether there is credible evidence supporting the commission's finding that Vasquez did not suffer compensable injury to his back on March 25, 1964, or January 6, 1965.

There is no dispute that Vasquez failed to present any evidence establishing that he incurred medical expense or suffered disability as a result of the eye injury on March 25, 1964. The dispute centers around the alleged back injury.

Whether or not Vasquez sustained compensable injuries to his back while working on either March 25, 1964, or January 6, 1965, is a question of fact for the commission to decide. This court's review of the commission's finding is limited to a determination of whether credible evidence exists to support that finding.

As the court said in *Indianhead Truck Lines v. Industrial Comm.:* [6]

"If credible evidence exists in support of the commission's findings, such findings are conclusive."

Mr. Justice HALLOWS (now Chief Justice), in *Unruh v. Industrial Comm.* [7] made the following comment which is appropriate to this case:

---

[6] (1962), 17 Wis. 2d 562, 565, 117 N. W. 2d 679.

[7] (1959), 8 Wis. 2d 394, 99 N. W. 2d 182.

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make." [8]

That Vasquez underwent surgery to correct his back condition is admitted; however, whether or not he suffered a compensable injury on March 25, 1964, or on January 6, 1965, is in dispute. A perusal of the record in this case discloses credible evidence which supports the commission's finding that he did not.

Vasquez testified that the March 25, 1964, injury occurred while he was lifting a mold weighing approximately 60 or 70 pounds. He further claimed that he mentioned this injury to his foreman and to Dr. Chester T. Mroczkowski later in the day when he was treated at the industrial clinic for the eye disorder. This latter testimony is disputed by Dr. Mroczkowski. Also, it is not disputed that Vasquez continued to work the full day doing his usual work after the alleged injury. His admission to Evangelical Deaconess Hospital on March 27, 1964, was necessitated by factors other than the alleged back injury, namely, the need for a tonsillectomy operation. Vasquez's testimony that he told Doctors Saketos and Spankus about the alleged back injury during the tonsillectomy confinement conflicts with the doctors' testimony on this point. Dr. Saketos stated that Vasquez made no complaints about his back until April 3, 1964, at which time Dr. Spankus was called in for consultation. Dr. Spankus testified that Vasquez did not mention any specific back injury at any time until just prior to the surgery of June 5, 1964. Thus, the issue was one of credibility and the commission, as it was free to do, chose to believe the doctors' testimony. In this respect the facts of this case are clearly distinguishable from those of *Richardson v. Industrial Comm.* [9] In *Richardson* the

---

[8] *Id.* at page 398.

[9] (1957), 1 Wis. 2d 393, 84 N. W. 2d 98.

commission was found to have erred in disbelieving the applicant's uncontradicted testimony. Here the commission made a permissible choice between the applicant's testimony and the testimony of several doctors to the contrary.

The following excerpt from the transcript includes all of Vasquez's direct testimony regarding the fall on January 6, 1965.

"*Q.* What happened while you were on the job on January the 5th, 1965? *A.* I went to my foreman to report for work.

"*Q.* Did he assign you a job? *A.* He wanted me to keep—to work on the molds.

"*Q.* What did you say to him? *A.* I asked him for a lighter job.

"*Q.* What did he tell you? *A.* He told me that there were no easy jobs.

"*Q.* What kind of job did he assign you to? *A.* He gave me a shovel to shovel dirt.

"*Q.* Did you start doing that work? *A.* I started to do it, but I could hardly do it.

"*Q.* Did you work all that day? *A.* Yes.

"*Q.* Were you taken to the hospital from the plant on the 5th of January, 1965? *A.* I think it was on the 6th. I don't remember the exact date, but I know that I was taken to the hospital from the plant.

"*Q.* Why were you taken to the hospital from the plant? *A.* As I was shoveling dirt I fell forward and went unconscious.

"*Q.* Do you remember what part of your body struck the floor or ground? *A.* The head and my back."

Vasquez gave no explanation concerning the possible reason for this fall. No one else gave any explanation for the fall. Given this lack of explanation, the instant case is governed by *Nielsen v. Industrial Comm.,*[10] and there is no presumption that Vasquez's fall, even though on his employer's premises, arose out of the employment. Therefore, the injuries resulting from the fall are not compensable.

[10] (1961), 14 Wis. 2d 112, 109 N. W. 2d 483.

The fact that the defendant employer paid Vasquez $195 for temporary total disability from January 6, 1965, to January 26, 1965, is of no moment. This voluntary payment was not an admission of liability.[11]

*By the Court.*—Judgment affirmed.

[11] *See Scholz v. Industrial Comm.* (1954), 267 Wis. 31, 64 N. W. 2d 204, 65 N. W. 2d 1.